UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In the Matter of the Seizure of

FIFTY THOUSAND TWO HUNDRED
FIFTY DOLLARS ($50,250) IN UNITED
STATES CURRENCY,

     - and -                            Index No.

KARIE A. PEREZ,

             Claimant-Movant,

     - against -

UNITED STATES OF AMERICA,
DRUG ENFORCEMENT ADMINISTRATION,

             Defendant.
------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RETURN OF SEIZED PROPERTY PURSUANT TO 18 U.S.C. § 983**

Steven L. Kessler
LAW OFFICES OF STEVEN L. KESSLER
747 Third Avenue, 20th Floor
New York, N.Y. 10017-2803
(212) 661-1500
*Attorneys for Claimant-Movant Karie A. Perez*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The Seizure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The DEA Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    DEA's Rejection of the Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Ms. Perez's Response to DEA's Rejection of the Claim. . . . . . . . . . . . . . . . . . . 7

    Response from DEA Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Ms. Perez's August 26, 2020 Response and Petition . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1.    DEA Fails to Provide Timely Notice of Administrative Forfeiture . . . . . . . . . . 13

          Holding the property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2.    DEA's Adoption of an Unlawful Seizure Violated CAFRA. . . . . . . . . . . . . . . 18

3.    The DEA's Rejection of the Claim Violates CAFRA and Mandates Dismissal. . 22

4.    Pre-Judgment Interest and Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## *CASES*

*Kazazi v. U.S. Customs & Border Prot.*, 376 F. Supp. 3d 781 (N.D. Ohio 2019) . . . . . . 29

*Luis v. United States*, 578 U.S. ___, 136 S. Ct. 1083 (2016) . . . . . . . . . . . . . . . . . . . . . . 20

*One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693 (1965) . . 18

*Return of Seized Prop. v. United States*, 625 F. Supp. 2d 949 (C.D. Cal. 2009) . . . . 15, 17

*Sierra Club v. Morton*, 405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. 2014 Mercedes-Benz GL350BLT, VIN: 4JGDF2EE1EA411100*, 162 F.
    Supp. 3d 1205, 1211 (M.D. Ala.), *judgment entered sub nom. United States v.
    2014 Mercedes-Benz GL350BLT*, 2016 WL 684603 (M.D. Ala. Feb. 18, 2016) . 26

*United States v. $10,000.00 in U.S. Currency*, 2007 WL 2330318 (S.D. Cal. Aug. 13,
    2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. $11,500 in U.S. Currency*, 710 F.3d 1006 (9th Cir. 2013) . . . . . . . . 16, 17

*United States v. $191,910 in U.S. Currency*, 16 F.3d 1051 (9th Cir. 1994) . . . . . . . . . . 25

*United States v. $200,255.00 in U.S. Currency*, 2006 WL 1687774 (M.D. Ga. June 16,
    2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*United States v. $229,850.00 in U.S. Currency*, 50 F. Supp. 3d 1171 (D. Ariz. 2014) 14, 26

*United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66 (2d Cir. 2002) 21

*United States v. $677,660.00 in U.S. Currency Crumpler*, 2012 WL 12887703 (N.D. Ohio
    Feb. 2, 2012), *aff'd sub nom. United States v. $677,660.00 in U.S. Currency*, 513
    F. App'x 531 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Any And All Funds on Deposit In Account No. 12671905, Held In The
    Name of Landlocked Shipping Co. At Wells Fargo Brokerage Servs., LLC, All
    Interest And other Proceeds Traceable Thereto*, 2010 WL 3185688 (S.D.N.Y.

Aug. 10, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Cambio Exacto, S.A.*, 166 F.3d 522 (2d Cir. 1998) . . . . . . . . . . . . . . 23

*United States v. Contents of Account Numbers 208-06070 and 208-06068-1-2*, 847 F.
        Supp. 329 (S.D.N.Y.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Funds in the Amount of $314,900.00*, 1:05-cv-3012 (N.D. Ill. Dec. 21,
        2005) (Gettleman, J.) (doc. no. 26), *reconsideration denied*, 2006 WL 794733
        (N.D. Ill. Mar. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Hill*, 2014 WL 971748 (D. Vt. Mar. 12, 2014) . . . . . . . . . . . . . . . . . . . 20

*United States v. Miscellaneous Firearms, Explosives, Destructive Devices, Ammunition*,
        399 F. Supp. 2d 881 (C.D. Ill.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. One 2007 Harley Davidson Street Glide Motorcycle VIN
        1HD1KB4197Y722798*, 982 F. Supp. 2d 634 (D. Md. 2013) . . . . . . . . . . . . . . . . 27

*United States v. Pickett*, 2012 WL 694712 (E.D.N.Y. Mar. 1, 2012) . . . . . . . . . . . . . . . 20

*United States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d
        1134 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account
        L7N01967*, 731 F.3d 189 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. U.S. Currency, $81,000.00*, 189 F.3d 28 (1st Cir.1999) . . . . . . . . . . . . 24

*United States v. U.S. Currency in Amount of Five Hundred Ninety-Eight Thousand Eight
        Hundred Twenty Six Dollars*, 2007 WL 2713367 (E.D.N.Y. Sept. 13, 2007) . . . 24

*United States v. Wilson*, 699 F.3d 789 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Warth v. Selden*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## _FEDERAL CONSTITUTION, STATUTES and REGULATIONS_

U.S. CONST. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 881. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

18 U.S.C. § 981(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 18, 20

18 U.S.C. § 983(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 13-16

18 U.S.C. § 983(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 23

18 U.S.C. § 983(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11, 26-27

18 U.S.C. § 983(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

18 U.S.C. § 983(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

28 U.S.C. § 1961. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

28 U.S.C. § 2465. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

28 C.F.R. § 8.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 25

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions,
   Rule G . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

## _OTHER AUTHORITIES_

NY CPLR Art. 13-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

H.R. Rep. 106-192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Stefan D. Cassella, _The Civil Asset Forfeiture Reform Act of 2000: Expanded
Government Forfeiture Authority and Strict Deadlines Imposed on All Parties_,
   27 J. Legis. 97 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## PRELIMINARY STATEMENT

Claimant-Movant Karie A. Perez respectfully submits this Memorandum of Law in support of her motion, pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), codified at 18 U.S.C. § 983, for the return of seized property – $50,250 in United States currency – as a result of numerous violations of CAFRA and decisional law regarding civil forfeiture.

Those violations include:

(1)   Failure to provide timely notice of administrative forfeiture in violation of 18 U.S.C. § 983(a)(1)(A)(iv);

(2)   Refusal to return seized property for failure to provide timely notice upon due demand from the "person from whom the property was seized" in violation of 18 U.S.C. § 983(a)(1)(F);

(3)   Rejection of a valid and timely Claim and refusal to refer the matter to the U.S. Attorney for judicial forfeiture proceedings in violation of 18 U.S.C. § 983(a)(3)(A);

(4)   Purporting to impose requirements for a valid administrative claim beyond those imposed by CAFRA, in violation of 18 U.S.C. § 983(a)(2)(C)(i)-(iii);

(5)   Failure to adhere to the time requirements for commencement of judicial forfeiture proceedings in violation of 18 U.S.C. § 983(a)(3)(B);

(6)   Adopting for federal forfeiture property unlawfully seized by local law enforcement in violation of 18 U.S.C. § 981(b)(2)(B);

(7)   Failure to secure an arrest warrant to support the continued retention of seized property in violation of Supplemental Rule G(3)(b)(i);

(8)   Commencement of administrative forfeiture proceedings against property without (i) possessing "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," as required by Supplemental Rule G(2)(f) or (ii) being able to satisfy its burden under 18 U.S.C. § 983(c) "to establish, by a preponderance of the

evidence, that the property is subject to forfeiture" and that there is "a substantial connection between the property and the offense," and

(9) Unlawfully orchestrating the response to Ms. Perez's claim to limit judicial review of the administrative forfeiture to notice issues pursuant to 18 U.S.C. § 983(e).

## FACTS

### The Seizure

On August 19, 2019, with no warrant, no arrest and no probable cause, local law enforcement seized the property from Ms. Perez's home, an apartment in Bronx County, New York. The details of the unlawful seizure are set forth under oath in Ms. Perez's sworn Claim, submitted herewith as Exhibit "A" to the Kessler Declaration.  Ms. Perez repeatedly contacted the local sergeant in charge to find out how to secure the return of her property.  She was told to wait and she would be notified.

### The DEA Notice

Sometime thereafter, the matter was turned over to the U.S. Drug Enforcement Administration (DEA) for federal forfeiture.  Pursuant to CAFRA's deadline for adoptive forfeitures, the government was required to either provide Ms. Perez with written notice of administrative forfeiture or commence judicial forfeiture proceedings within 90 days of the seizure – no later than November 19, 2019.  *See* 18 U.S.C. § 983(a)(1)(A)(iv) ("In a case in which the property is seized by a State or local law enforcement agency and

2

turned over to a Federal law enforcement agency for the purpose of forfeiture under

Federal law, notice shall be sent not more than 90 days after the date of seizure by the

State or local law enforcement agency").

The government took no action with respect to the property for more than 158

days.  In late January 2020, an administrative forfeiture notice from the DEA, dated

January 24, 2020, was sent to Ms. Perez.  A copy of the Notice is attached to the Kessler

Declaration as Exhibit "B".   The Notice stated that the property was being retained for

administrative forfeiture as property involved in an alleged violation of 21 U.S.C. § 881,

the drug forfeiture statute.  Upon receipt of the Notice, Ms. Perez retained counsel to

secure the return of the property.


**The Claim**

On February 26, 2020, well within thirty-five days of the date of the Notice, Ms.

Perez, with the assistance of counsel, served by overnight mail a Verified Claim upon the

DEA ("the Claim").   The six-page document set forth several bases for the return of the

property.  First and foremost, the Claim asserted that the property must be returned to Ms.

Perez because the Notice was late and that no further showing was required under

CAFRA for the "person from whom the property was seized" to secure the return of that

property.

Nevertheless, the Claim further responded to the substance of the administrative

3

forfeiture, establishing that the funds were of legitimate source and purpose as well the

unlawfulness of the seizure by local law enforcement.  The Claim set forth under oath

detailed information about Ms. Perez's employment, education and personal life.

With respect to the funds, Ms. Perez stated:

[T]he property either belongs to Claimant or Claimant has a legal
possessory interest in it. She earned some of it from her employment. Some
of it was earned by [her partner] Mr. [Juan] Lopez from his employment as
a maintenance worker in Manhattan and from other jobs. Since the property
seizure, Mr. Lopez has changed jobs and works as a driver for a medical
supply company. The remaining money was loaned to Claimant by her
cousin, Mariel Rivera, a registered nurse who for more than 12 years has
worked in the Oncology department at Montefiore Medical Center in the
Bronx. Claimant and Mr. Lopez were saving money to purchase a home in
Florida so they could move their family from their rental in the Bronx. (Ex.
"A", ¶ 5).

The Claim also pointed out that the circumstances surrounding the seizure

demonstrated its patent unlawfulness and the racial profiling that offered the only

plausible explanation for the officers' misconduct:

The plain clothed officers who entered Claimant's home on the
evening of August 19, 2019 without a warrant threatened Claimant and Mr.
Lopez with arrest if they did not allow the officers to search the house. The
plain clothed officers told Claimant and Mr. Lopez that they believed
Claimant and Mr. Lopez possessed illegal drugs or guns. No drugs or guns
of any kind were found. In fact, nothing illegal was found. The plain
clothed officers claimed they had followed Mr. Lopez to his home from a
drug deal. The plain clothed officers stated that they had observed Mr.
Lopez carrying an allegedly suspicious looking bag into the home. In fact,
the bag that Mr. Lopez brought into his house and which the DEA officers
claimed contained narcotics in fact contained a Nintendo Wii game console
for his son. Mr. Lopez was returning home from visiting his family in
Pennsylvania..

4

It is clear from the facts of this matter, therefore, that this was a random act by the plain clothed officers based on racial profiling. So, with no basis whatsoever other than that Claimant had cash in the house and is a Hispanic living in the Bronx, the agents seized Claimant's savings with no factual or legal support.  (Ex. "A", ¶¶ 6-7).

The Claim thus concluded:

The aforesaid property must be returned to Claimant because the statute of limitations has run on the commencement of this proceeding. Further, the property must be returned to Claimant because said property was not and is not subject to seizure or forfeiture pursuant to 21 U.S.C. § 881 or any other statute or regulation of the United States Government. Claimant would further show that she committed no crime, that the funds are from legitimate sources and were to be used for lawful purposes, and that any forfeiture would also violate the Eighth Amendment to the Constitution. (Ex. "A", ¶ 8).

**DEA's Rejection of the Claim**

The DEA sent a response to Ms. Perez's counsel rejecting the Claim on or about March 13, 2020.  Apparently due to postal delivery issues related to the pandemic, counsel did not receive this response until his repeated further contacts with the DEA resulted in the DEA re-sending the response on or about June 11, 2020.  A copy of the June 11 response from the DEA attaching its March 13, 2020 rejection notice is attached to the Kessler Declaration as Exhibit "C".

The DEA's March 13 response is a completed form signed by a paralegal with the DEA's Asset Forfeiture Section.  The response disregarded the agency's late notice of forfeiture and focused solely on the sufficiency of the Claim, thereby refusing to comply

with the statute's requirement that property for which timely notice is not provided must be returned.

The DEA's assessment of the validity of the Claim also contravened the statute. Notably, the form itself properly limits the agency's review of the sufficiency of a claim to the three requirements of CAFRA.  The statute provides that a claim "need not be made in any particular form" and requires only that it "(i) identify the specific property being claimed, (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury."  18 U.S.C. § 983(a)(2)(C)-(D).

The agency's March 13 response, however, checked the last box on the form labeled "Other", and typed in the following additional language: "Please be advised that your client must identify specific amount claimed as owner and may not assert interest, in the alternative, for the same property.  Further, your client may not file a claim on behalf of third party."

The DEA response cited no statute or regulation to support these purported additional requirements.  Nevertheless, it rejected the Claim as defective and, pursuant to procedures set forth in agency regulations, advised Ms. Perez that, unless she submitted an amended Claim satisfying these additional requirements within thirty days, her property would be administratively forfeited.  *See* 28 C.F.R. § 8.10(g).[1]

---

[1]28 C.F.R. § 8.10(g), titled "Defective claims," provides: "If the seizing agency determines that an otherwise timely claim does not meet the requirements of § 8.10(b), the seizing agency may notify the claimant of this determination and allow the claimant a reasonable time to cure the defect(s) in the claim. If, within the time allowed by the seizing agency, the requirements of § 8.10(b) are not met, the claim

**Ms. Perez's Response to DEA's Rejection of the Claim**

On June 23, 2020, Ms. Perez's counsel responded to the DEA's March 13, 2020 response in a letter to the agency sent by overnight mail.  A copy of the June 23, 2020 response is attached to the Kessler Declaration as Exhibit "D".

The June 23 response pointed out the DEA's continuing disregard of the fact that the Notice was served months late.  It further demonstrated that it is not necessary to file any claim to secure the return of seized property in that situation.  The person requesting the property's return only needs to be "the person from whom the property was seized" – a fact conceded by the DEA.

The June 23 response further demonstrated that the DEA's rejection of the Claim sought to impose upon Ms. Perez conditions that exceeded the requirements of CAFRA. The Claim satisfies the statute and establishes standing under applicable case law.  It sets forth facts under oath that demonstrate a "distinct and palpable injury" from the seizure, "actual possession, dominion, control, title, or financial stake" in the seized property and a stake in the outcome of the forfeiture proceedings.  See Ex. "D" at 4-5 (citing cases).

The June 23 response reiterated that the DEA's objections to the Claim were a distraction from the fact that the seizure was unlawful, the DEA Notice was late and there is no basis for the forfeiture of the property:

---

shall be void and the forfeiture proceedings shall proceed as if no claim had been submitted. If the claimant timely cures the deficiency, then the claim shall be deemed filed on the date when the appropriate official receives the cured claim."  "[T]he requirements of § 8.10(b)" are identical, as they must be, to those set forth in 18 U.S.C. § 983(a)(2)(C).

The DEA's baseless grounds for rejecting the Verified Claim, combined with its disregard of the invalidity of the Seizure Notice and its attempt to impose additional unlawful conditions to the assertion of a valid Verified Claim, further highlights the fact that there is no factual basis for retention or forfeiture of the Funds. The Funds are of legal source and purpose. There was no legitimate basis for seizing them and there is no legitimate basis for continuing to retain them.

Accordingly, the Claimant demands that the funds either be immediately released and returned to her or that this matter be promptly referred to the U.S. Attorney's Office for the Southern District of New York in accordance with the requirements of CAFRA.  (Ex. "D" at 5).

**Response from DEA Counsel**

The June 23, 2020 letter from Ms. Perez's counsel was referred to an attorney in the Asset Forfeiture Unit of the DEA for response.  Notably, the response was mailed more than 35 days after the agency's receipt of the June 23 letter, thereby ensuring that Ms. Perez's purported 'time to cure' the alleged defects in her Claim had expired.  A copy of the DEA counsel's letter, dated August 3, 2020, is attached to the Kessler Declaration as Exhibit "E".

The August 3, 2020 letter from DEA counsel did three things.  First, it sought to bolster the paralegal's March 13, 2020 rejection of Ms. Perez's Claim, asserting that the Claim "identified multiple and potentially inconsistent interests, without identifying the specific property claimed for each interest" and that the Claim "stated multiple interests, rather than a single interest, in an unspecified portion of the property."  Ex. "E" at 1.

Again, however, DEA counsel cited no support for this position.  Further, the

August 3 letter purported to distinguish the authorities cited by the June 23 letter by asserting the issue resulting in the rejection of the Claim was not one of "standing" but rather the assertion of a valid claim.  DEA counsel then added the new contention that the nature of Ms. Perez's stated interest in the property somehow rendered the oath supporting her Claim "meaningless," citing an inapposite decision regarding trial testimony given in response to an ambiguous question.  Ex. "E" at 1-2.

The result of these contentions was that DEA continued to adhere to its position that Ms. Perez's Claim was defective.  As that defect had not been 'cured,' DEA maintained that the Claim was now void and the agency was under no obligation to refer the matter to the U.S. Attorney's office for commencement of civil forfeiture proceedings in this Court.

DEA counsel's August 3 letter was at least notable for addressing a key issue avoided by the March 13 rejection: the agency's late notice.  The response, however, only highlighted the invalidity of the DEA's position.  First, DEA counsel asserted that "[y]our client's failure to file a valid claim effectively waived the opportunity to litigate the legality of the seizure and subsequent administrative forfeiture."  Ex. "E" at 2.

DEA counsel's support for this, however, was a 1995 decision. This decision predated CAFRA, and its drastic overhaul of civil forfeiture procedures, by a number of years.  His assertion also avoided the key change effected by CAFRA that constituted the primary basis for the return of the seized property to Ms. Perez.  Where the administrative

9

agency violates the notice deadline, the administrative forfeiture of the property is void. The property must be returned to "the person from whom it was seized" upon due demand, regardless of the sufficiency of any claim.

DEA counsel further asserted that "the DEA, in fact, mailed written notice to your client's last known residential address within sixty days of the seizure."  Ex. "E" at 2. This assertion, made for the first time nearly a year after the seizure and six months after receipt of Ms. Perez's claim, was unsupported by any proof, documentary or otherwise.

The letter then quickly changed the subject, asserting that, "even assuming a violation of this [notice] deadline, the DEA may commence another forfeiture proceeding and the *subsequent* notice sent to your client effected that result."  Ex. "E" at 2 (emphasis added).  As more fully discussed below, however, the cases cited by DEA counsel to support this assertion refer solely to *judicial* forfeiture proceedings, not administrative proceedings.  CAFRA provides, and these decisions confirm, that, once the agency violates the notice deadline and receives a demand from "the person from whom the property was seized," the agency can no longer seek to administratively forfeit the property.  After that, if the government wishes to continue to seek the forfeiture of the property, it must do so in a civil or criminal proceeding in federal court.  *See* 18 U.S.C. § 983(a)(3); 28 C.F.R. § 8.10(a).

The final part of the August 3 letter asserted that, although the agency was rejecting Ms. Perez's Claim as void, it would still consider a petition for remission or

10

mitigation, if filed within 28 days of the date of counsel's letter.

**Ms. Perez's August 26, 2020 Response and Petition**

Well before the 28-day deadline imposed by DEA counsel's August 3, 2020 letter, counsel for Ms. Perez responsed by overnight mail.  A copy of this letter, dated August 26, 2020, is attached to the Kessler Declaration as Exhibit "F".

The eight-page August 26, 2020 response from Ms. Perez's counsel addressed in depth incorrect factual, legal and procedural assumptions and contentions set forth in DEA counsel's August 3 letter.  As those contentions form a substantial part of the legal argument below, they are only briefly stated here.  First, the August 26 letter reiterated DEA's late Notice and the resulting invalidity of any administrative forfeiture proceedings, thereby requiring the immediate return of the property.  Second, it reaffirmed the legal and factual baselessness of DEA's objections to the validity of Ms. Perez's Claim.  Third, in light of the validity of the Claim, it demonstrated that DEA also violated the CAFRA deadline requiring the government to commence judicial forfeiture proceedings with respect to the property within 90 days of receipt of the Claim, an uncurable defect that requires the government to return the property and bars the government from taking "any further action to effect the civil forfeiture of such property . . .."  18 U.S.C. § 983(a)(3)(B)(ii)(II).

Notwithstanding these issues, and in the hope that the DEA's offer to consider a

petition for remission or mitigation raised a possibility of resolving the matter without this Court's intervention, the August 26 letter requested that it, together with Ms. Perez's Verified Claim, be treated as a petition.  To that end, Ms. Perez's counsel enclosed financial documentation supporting the legal source and purpose of the seized funds, including three years of Ms. Perez's tax returns and three years of tax returns of Mariel Rivera, Ms. Perez's cousin who lent Ms. Perez some of the seized funds to help her in the planned purchase of a home in Florida. Also enclosed was a notarized statement from Ms. Rivera, confirming the amount and timing of the loan.  These documents are part of Exhibit "F" to the Kessler Declaration.

The August 26 letter includes an attestation by Ms. Perez in support of the request to treat this submission as a petition for remission or mitigation: "I have retained the above-named attorney who has authority to represent me in this matter. I have fully reviewed the foregoing petition and found that its contents are truthful and accurate in every respect, to the best of my knowledge and belief. I declare under penalty of perjury that the foregoing information is true and correct, to the best of my knowledge and belief."  Ex. "F" at 8.

As more fully set forth in the Kessler Declaration, submitted in support of Ms. Perez's request for emergency relief, it is unclear whether the DEA will voluntarily return the funds to Ms. Perez in response to her pending petition for remission or mitigation. Thus, this motion is filed now to protect Ms. Perez's property rights during this period.

## ARGUMENT

As summarized in the Preliminary Statement, above, Ms. Perez is entitled to the return of her property on numerous grounds.

1. ### DEA Fails to Provide Timely Notice of Administrative Forfeiture

The DEA's failure to provide timely notice of administrative forfeiture proceedings is the heart of this case.  This failure rendered DEA's proceedings against the property void and, without more, requires granting the relief sought on this motion.

CAFRA requires federal agencies to serve notice of administrative forfeiture within 60 days of seizure if the property is seized by federal authorities or within 90 days of seizure if, as here, the property was seized by state or local authorities and then 'adopted' by the agency for federal forfeiture proceedings.  18 U.S.C. § 983(a)(1)(A)(i) (federal seizures); *id.* § 983(a)(1)(A)(iv) (adoptive forfeitures).

Strict compliance with these deadlines is required except under very limited circumstances, none of which the DEA has claimed apply here.[2]

As a former government forfeiture specialist has stated:

---

[2] *See*, *e.g.*, 18 U.S.C. § 983(a)(1)(A)(v) (limited time extension where identity of claimant is initially unknown); *id.* § 983(a)(1) (B)-(C) (permitting one 30-day extension by agency supervisor and one 60-day extension by the court under extremely limited emergency factual scenarios).  Of course, no administrative notice of seizure is required if, within the 60- or 90-day period, the government instead commences civil forfeiture proceedings against the property or obtains a criminal indictment that includes a forfeiture allegation against the property.  *Id.* § 983(a)(1)(A)(ii)-(iii).  In that event, however, the judicial forfeiture supersedes and replaces the administrative forfeiture proceeding.

> The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well.

Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 122-25 (2001), *quoted in, inter alia, United States v. $229,850.00 in U.S. Currency*, 50 F. Supp. 3d 1171, 1176 (D. Ariz. 2014).

The deadline violated by the DEA here, and the consequences of that violation, are clear:

> If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

18 U.S.C. § 983(a)(1)(F).

The government here failed to "send notice of a seizure of property in accordance with [the deadlines imposed by] subparagraph (A) to the person from whom the property was seized . . . ."  Accordingly, the government is required to "return the property to that person".  *See*, *e.g.*, *Return of Seized Prop. v. United States*, 625 F. Supp. 2d 949, 953-54 (C.D. Cal. 2009) ("courts have observed that [§ 983(a)(1)(A)(i)] generally requires notice

14

to be given within sixty (60) days of any seizure by the Government") (citing *United States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1141 (9th Cir. 2008) ("Under CAFRA, the government has sixty days after seizing property to send written notice to interested parties"); *United States v. $10,000.00 in U.S. Currency*, 2007 WL 2330318, at *1 (S.D. Cal. Aug. 13, 2007) (granting summary judgment and return of property due to Government's failure to provide timely notice after seizure); *United States v. $200,255.00 in U.S. Currency*, 2006 WL 1687774 (M.D. Ga. June 16, 2006) ("First, under the statute, the seizing authority has either 60 or 90 days within which to provide notice; in the absence of timely notice, the seizing agency must return the seized property."); *United States v. Miscellaneous Firearms, Explosives, Destructive Devices, Ammunition*, 399 F. Supp. 2d 881, 882 (C.D. Ill. 2005) ("Pursuant to CAFRA, the Government must commence either a non-judicial forfeiture (administrative) or a judicial forfeiture within 60 days after the seizure of the property")).

The statute requires no other showing.  "That person" does not have to be a claimant.  He or she only has to be "the person from whom the property was seized."

There is no dispute that Ms. Perez is "the person from whom the property was seized."  She made due demand for the return of her seized property.  The DEA was required to return it.  Its refusal to do so is a violation of violation of 18 U.S.C. § 983(a)(1)(F).  Accordingly, the property must be returned to her on this ground alone.

**Holding the property:** In the August 3, 2020 letter, DEA counsel contended that,

even if the agency violated the notice requirements, it did not have to return the property

to Ms. Perez because "even assuming a violation of this deadline, the DEA may

commence another forfeiture proceeding and the subsequent notice sent to your client

effected that result."   Ex. "E" at 2.

This is a false statement of the law.  And no case cited by the DEA has held that an

agency that violates the notice deadline may commence another forfeiture proceeding.

DEA counsel cited cases addressing the issue of whether the property must be

returned if, in the interim, a *judicial* civil forfeiture proceeding has been commenced

against the property.  *See United States v. $11,500 in U.S. Currency*, 710 F.3d 1006, 1016

(9th Cir. 2013) (citing cases).  These cases construed the above-quoted language from §

983(a)(1)(F) that the agency must return the property "without prejudice to the right of the

Government to commence a forfeiture proceeding at a later time."  As *$11,500 in U.S.*

*Currency* noted, some decisions hold that the agency must return the property

immediately while others hold that the agency can continue to hold the property if judicial

forfeiture proceedings are promptly commenced within statutory deadlines.  However,

regardless of their position on that issue, these cases all properly found that the "forfeiture

proceeding" referenced in this statute is a *judicial* forfeiture, not a second administrative

forfeiture proceeding.

As one decision relied upon by the court in *United States v. $11,500 in U.S.*

*Currency* stated, "[t]hough the remedy for failing to provide timely notice is the return of

16

the property seized, the statute also permits the Government to commence a *judicial*

forfeiture proceeding at a later time. That time has come, as the Government filed its civil

judicial forfeiture action." *Return of Seized Prop. v. United States*, 625 F. Supp. 2d at

954 (emphasis added) (citing 21 U.S.C. § 881(b); 18 U.S.C. § 981(b) ("a seizure may be

made without a warrant if [ ] a complaint for forfeiture has been filed in the United States

district court and the court issued an arrest warrant *in rem* pursuant to the Supplemental

Rules for Certain Admiralty and Maritime Claims").

These decisions do not help the DEA here.  DEA certainly has not argued for

commencement of *judicial* forfeiture proceedings.  To the contrary, despite due demand,

the DEA has repeatedly refused to either return the property or refer the matter to the U.S.

Attorney's office for commencement of civil forfeiture court proceedings. The decisions

cited by DEA counsel provide no support for the DEA's position.  Indeed, no federal

court has issued an arrest warrant *in rem* required for continued retention of the property.

*See* 18 U.S.C. § 981(b).

The cases are clear.  The statutory phrase "commence a forfeiture proceeding"

does *not* apply to administrative forfeiture proceedings.  Consider the consequences were

this not the case. Administrative agencies would be able to compensate for a late notice of

seizure merely by serving another notice.  This would render CAFRA's deadlines for

serving notice after the administrative seizure of property meaningless.  DEA counsel's

assertion here to the contrary is, at best, wishful thinking and, at worst, frivolous.

17

The procedures and requirements CAFRA imposes on administrative agencies are unambiguous.  The agency gets only one shot at forfeiture.  Its notice must be timely.  The DEA missed the deadline, and did so by more than two months.  The seized property must therefore be returned to the "person from whom the property was seized."  That person is Ms. Perez.

2.   **DEA's Adoption of an Unlawful Seizure Violated CAFRA**

The Fourth Amendment bar against unlawful warrantless seizures, long held to apply to forfeiture proceedings, was expressly codified into federal forfeiture law as part of the enactment of CAFRA.  *See One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693 (1965) (holding that the Fourth Amendment is applicable to forfeiture proceedings); *United States v. $200,255.00 in U.S. Currency, More or Less*, 2006 WL 1687774, at *6-7 ("The requirements of the Fourth Amendment are restated in CAFRA's statutory framework, which requires that seizures be made pursuant to a warrant or that seizures be based upon probable cause and pursuant to a lawful arrest or search").

That constitutional protection applies to adoptive forfeitures as well.  18 U.S.C. § 981(b)(2)(C) "requires that property transferred to the Federal agency must have been lawfully seized by a State or local law enforcement agency."  *United States v. $200,255.00 in U.S. Currency*, *supra*.  This provision requires the federal agency to make an

18

independent determination of the lawfulness of the seizure by state or local authorities *before* accepting the property for federal forfeiture.  This ensures that 'bad' seizures are not merely pawned off on federal agencies so that state or local law enforcement can avoid scrutiny for their actions while still collecting the lion's share of any forfeiture spoils.  If, as here, the seizure was unlawful, the federal agency's 'adoption' is bound by that illegality.

New York State, as all fifty states, has its own civil forfeiture statute. Under NY CPLR Article 13-A, the seizing authorities here could have retained the property and, if successful in such proceedings, would not have had to share the funds with the federal government.  But, in that event, the police officers responsible for the unlawful search and seizure in Ms. Perez's home would have had to support the forfeiture claim.

As stated in the Claim, and left undisputed by the DEA in any of its responses, the seizure here was unlawful.  There was no warrant and no probable cause.  While the DEA is compelled to argue that the seized property is related to illegal drugs, as that is its jurisdiction, no drugs were seen or found anywhere in the course of the search. Indeed, no criminal activity of any kind was alleged to have been observed by the officers who conducted the search.  The seizure, and this entire proceeding, is based on one thing only: Ms. Perez's possession of cash in her home.

There is zero evidence that this property has any relationship to criminal activity of any kind, let alone the drug violation alleged in the DEA Notice.  The government has no

19

right to hold or seek to forfeit untainted property.  As the Supreme Court reaffirmed, the

government has no interest in untainted property:

> [W]hether property is 'forfeitable' or subject to pretrial restraint under
> Congress' scheme . . . depends on who has the superior interest in the
> property at issue. . ..  The distinction . . . is . . . an important one, not a
> technicality. *It is the difference between what is yours and what is mine.*
>          . . . We have found no decision of this Court authorizing unfettered,
> pretrial forfeiture of the defendant's own 'innocent' property – property
> with no connection to the charged crime. . .. To permit the Government to
> freeze . . . untainted assets would unleash a principle of constitutional law
> that would have no obvious stopping place.

*Luis v. United States*, 578 U.S. ___, 136 S. Ct. 1083, 1091-94 (2016) (emphasis added);

*see also United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986) (pretrial restraint of untainted

property held unlawful by the Second Circuit thirty years before *Luis*).

If the DEA's refusal to return the property or transmit the matter to the U.S.

Attorney for civil forfeiture proceedings results in the administrative forfeiture of the

property, the government would not only evade judicial review of the initial warrantless

seizure and the DEA's unlawful adoption of that seizure in violation of 18 U.S.C. §

981(b)(2)(C).  It would forfeit property without any proof that the property is subject to

forfeiture.  See 18 U.S.C. § 983(e); *United States v. Hill*, 2014 WL 971748, at *2 (D. Vt.

Mar. 12, 2014) ("Section 983(e) . . . does not supply jurisdiction to review the merits of

the completed [administrative] forfeiture or to address [the] argument that the currency

was illegally seized") (citing, *inter alia*, *United States v. Pickett*, 2012 WL 694712 at *2

(E.D.N.Y. Mar. 1, 2012)).

20

This could not happen if the DEA complied with CAFRA and either returned the property or accepted Ms. Perez's valid Claim and referred the matter to the U.S. Attorney. In a civil forfeiture proceeding under CAFRA, the government cannot forfeit property unless it satisfies its burden of proof and demonstrates by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).  Further, where, as here, the government seeks to forfeit property on the ground that it was "involved in" criminal activity, it must also demonstrate a "substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).  These are significant burdens.

The Second Circuit has strongly emphasized the importance of adhering to the burden of proof imposed on the government by CAFRA:

> *It must be remembered that what is adjudicated in a judicial civil forfeiture proceeding is the government's right to the property, not the claimant's*. If the government can establish its right to forfeiture of the defendant property . . . the property is forfeited; if the government fails to do so, the property is not forfeited – regardless of whether or not the claimant turns out to be the actual owner of the property. Thus, the claimant's ownership of the defendant property is not at issue in determining the primary question of the government's right to forfeiture.

*United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 77 (2d Cir. 2002) (emphasis added).

By refusing to credit Ms. Perez's Claim, the DEA has avoided the commencement of judicial forfeiture proceedings which require the government to prove its case against the property and which provide the claimant with the full panoply of rights conferred by CAFRA.  See, e.g., *United States v. Sum of $185,336.07 U.S. Currency Seized from*

21

*Citizen's Bank Account L7N01967*, 731 F.3d 189, 198 (2d Cir. 2013) ("By applying a pre-CAFRA standard for civil forfeiture proceedings, the District Court 'plainly' erred in contravention of established law.  The error affected [claimant's] substantial rights . . . and, in our view, seriously affected the fairness of the civil forfeiture proceeding").  This proceeding ensures that Ms. Perez's rights under CAFRA are preserved and that the forfeiture proceeding is conducted in compliance with statutory requirements.

3.      **DEA's Rejection of the Claim Violates CAFRA and Mandates Dismissal**

        The unlawful seizure and adoption of the forfeiture, followed by the DEA's late Notice, have rendered this administrative proceeding void *ab initio*.  Thus, it is not surprising that, from the moment Ms. Perez sought the return of the property, the DEA has attempted to shift attention away from the fatal deficiencies of the proceeding and focus attention on her Claim.  During the months spent raising these invalid objections, however, the DEA has allowed the CAFRA deadline for commencement of civil forfeiture proceedings to expire.  Accordingly, the property must not only be returned due to late notice, but the government is now permanently barred from seeking civil forfeiture of the property as well.

        The government's objections to the sufficiency of Ms. Perez's Claim attempt to impose requirements that exceed those of CAFRA.  The DEA concedes that CAFRA sets forth only three requirements for assertion of a valid Claim: that it "(i) identify the

specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury." 18 U.S.C. § 983(a)(2)(C). Ex. "C" at 3; Ex. "E" at 1.

Ms. Perez's Claim satisfies these three requirements. It identifies the "specific property being claimed": the seized currency. It states her ownership and possessory "interest in such property." And it is made "under oath, subject to penalty of perjury."

The DEA's objections to the sufficiency of Ms. Perez's stated interest in the property remain unsupported, despite their being challenged to provide such support in the June 23, 2020 letter from Ms. Perez's counsel.

Standing in forfeiture cases has two components: statutory standing and Article III standing. To establish statutory standing, a claimant must timely file a verified claim asserting an interest in the property sought to be forfeited. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1998). The DEA's March 13 response conceded that Ms. Perez has satisfied this requirement. In addition, there is no dispute that she has satisfied Article III standing requirements, as the DEA has never contested that she has demonstrated a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972). Article III is satisfied if a claimant can "produce . . . evidence of a 'distinct and palpable injury'" that is "likely to be redressed by the requested relief . . .." *Cambio Exacto*, 166 F.3d at 526-27 (quoting *Warth v. Selden*, 422 U.S. 490, 501 (1975)).

23

As Ms. Perez demonstrated in her June 23, 2020 letter to the DEA, the property interests alleged in her Claim are sufficient to confer standing.  She has established interests in the property "by actual possession, dominion, control, title, or financial stake," *United States v. Contents of Account Numbers 208-06070 and 208-06068-1-2*, 847 F. Supp. 329, 333 (S.D.N.Y. 1994), a fact that the DEA has not, and cannot challenge, particularly as the Funds were taken from Ms. Perez's home.

The government's attempt to compel Ms. Perez to subdivide portions of the seized funds in which she holds an ownership interest with those in which she holds a possessory or other legitimate interest, such as those of a borrower, "short circuits [CAFRA's] requirement that the government show, by a preponderance of the evidence, that forfeiture applies."  *United States v. U.S. Currency in Amount of Five Hundred Ninety-Eight Thousand Eight Hundred Twenty Six Dollars*, 2007 WL 2713367, at *6 (E.D.N.Y. Sept. 13, 2007).

The fact that others may also have a legal interest in the Funds sufficient to confer Article III standing on them does not diminish Ms. Perez's standing to assert her legitimate interest in the Funds.  *See*, *e.g.*, *United States v. Any And All Funds on Deposit In Account No. 12671905, Held In The Name of Landlocked Shipping Co. At Wells Fargo Brokerage Servs., LLC, All Interest And other Proceeds Traceable Thereto*, 2010 WL 3185688, at *7 (S.D.N.Y. Aug. 10, 2010) ("When there is some facially colorable interest demonstrated, even where another party likewise demonstrates a claim of ownership or

24

possession, standing will still lie") (citing, *inter alia*, *United States v. U.S. Currency, $81,000.00*, 189 F.3d 28, 39 (1st Cir.1999) (Claimant has standing to challenge forfeiture of joint account held in conjunction with brother, alleged gangster Whitey Bulger, because "[h]e acted as a joint owner would, writing checks and withdrawing money, and exercised dominion and control over the account").

Ms. Perez's sworn statements regarding the legal source and purpose of the seized property do not, as the DEA asserts, invalidate her Claim.  Rather, they strengthen it, as they also provide "contextual information regarding the claimant's relationship to the seized property," and thus refute any potential objection of "mere" or "naked possession." *United States v. $677,660.00 in U.S. Currency Crumpler*, 2012 WL 12887703, at *6 (N.D. Ohio Feb. 2, 2012) (quoting *United States v. $191,1910 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994)), *aff'd sub nom*. *United States v. $677,660.00 in U.S. Currency*, 513 F. App'x 531 (6th Cir. 2013).

Further, an administrative agency like the DEA lacks jurisdiction to refuse to transmit a valid Claim to the U.S. Attorney for civil forfeiture because it disagrees with the claimant's proof regarding the forfeitability of administratively seized property.  Its function is similar to that of the Court's motion clerk, reviewing submissions for compliance with formal requirements.  This is made clear by the form initially used by the DEA to provisionally reject Ms. Perez's Claim.  See Ex. "C".  As with the 'defect and cure' procedures in 28 C.F.R. § 8.10(g), if there is a formal defect with motion papers, the

25

clerk returns the papers to the filing party to correct the error.  The clerk does *not*, however, decide the motion.  If the formal requirements are met, the motion is passed on to the assigned judge to assess its merits.

By improperly subjecting Ms. Perez's Claim to the 'defect and cure' procedures instead of returning the property or referring the matter to the U.S. Attorney for civil forfeiture proceedings, the DEA allowed the 90-day deadline for commencement of such proceedings to expire.  18 U.S.C. § 983(a)(3).  Ms. Perez's Claim was served on February 26, 2020.  Thus, the DEA had until no later than the end of May 2020 to return the funds or transmit the Claim.  The statutory deadline passed more than *three months ago*.

"[T]he 90-day deadline for the government to file a complaint is mandatory and should be strictly construed against the government."  *United States v. 2014 Mercedes-Benz GL350BLT, VIN: 4JGDF2EE1EA411100*, 162 F. Supp. 3d 1205, 1211 (M.D. Ala.), *judgment entered sub nom. United States v. 2014 Mercedes-Benz GL350BLT*, 2016 WL 684603 (M.D. Ala. Feb. 18, 2016) (citing *United States v. Wilson*, 699 F.3d 789, 795 (4th Cir. 2012) (§ 983(a)(3) contains a "mandatory limitation requiring the government's prosecutor to file its complaint not later than 90 days after a claim has been filed"); *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003) ("Because forfeitures are disfavored, forfeiture laws and their notice provisions are strictly construed against the government.") (citation and internal quotation marks omitted); *United States v. $229,850.00 U.S. Currency*, 50 F. Supp.3d at 1176 ("The 90-day time limit is mandatory

26

and the requirement that the Government release the seized property where it fails to file a

timely complaint for forfeiture is the 'sanction' that CAFRA imposes for such failure.")

(citation and internal quotation marks omitted)).  Indeed, forfeiture cases have been

dismissed where the government has missed the 90-day deadline by a single day.  *See*,

*e.g.*, *United States v. One 2007 Harley Davidson Street Glide Motorcycle VIN*

*1HD1KB4197Y722798*, 982 F. Supp. 2d 634 (D. Md. 2013);  *United States v. Funds in*

*the Amount of $ 314,900.00*, 1:05-cv-3012 (N.D. Ill. Dec. 21, 2005) (Gettleman, J.) (doc.

no. 26), *reconsideration denied*, 2006 WL 794733 (N.D. Ill. Mar. 21, 2006).

As a result of the government's failure to take action with respect to Ms. Perez's

Claim within the time requirements set forth by CAFRA, the government must "promptly

release the property pursuant to regulations promulgated by the Attorney General, and

may not take any further action to effect the civil forfeiture of such property in connection

with the underlying offense." 18 U.S.C. § 983(a)(3)(B).


4.   **Pre-Judgment Interest and Fees**

In the event that the relief sought on this motion is granted, Ms. Perez requests that

this Court accept a further submission regarding pre-judgment interest and reasonable

attorneys' fees pursuant to 28 U.S.C. § 2465.

That statute, enacted as part of CAFRA, provides that a claimant who

"substantially prevails . . . in any proceeding to condemn or forfeit property seized or

27

arrested under any provision of Federal law," shall be entitled, in addition to the "return[]

forthwith" of the property, to payment by the United States of the following:

> (A)     reasonable attorney fees and other litigation costs reasonably incurred by
> the claimant;

> (B)     post-judgment interest, as set forth in section 1961 of this title; and

> (C)     in cases involving currency, other negotiable instruments, or the proceeds of
> an interlocutory sale–

> > (i)     interest actually paid to the United States from the date of seizure or
> > arrest of the property that resulted from the investment of the
> > property in an interest-bearing account or instrument; and

> > (ii)     an imputed amount of interest that such currency, instruments, or
> > proceeds would have earned at the rate applicable to the 30-day
> > Treasury Bill, for any period during which no interest was paid (not
> > including any period when the property reasonably was in use as
> > evidence in an official proceeding or in conducting scientific tests
> > for the purpose of collecting evidence), commencing 15 days after
> > the property was seized by a Federal law enforcement agency, or was
> > turned over to a Federal law enforcement agency by a State or local
> > law enforcement agency.

28 U.S.C. § 2465(b)(1)(A)-(C).

The fact that Ms. Perez was compelled to file this proceeding instead of the

government does not affect her rights under the statute.  In fact, a recent decision

specifically rejected such an argument:

> The Government argues, despite its failure to act promptly, that
> because Petitioners filed this action instead of the Government, it is an
> 'equitable action for the return of property' and not a 'civil proceeding to
> forfeit property' as required by CAFRA. Therefore, argues the Government,
> CAFRA's fee-shifting provision does not apply to the present case. This
> argument overlooks the fact that if the Government intended to keep the

money, it was obligated to bring a civil proceeding to forfeit property within 90 days, which it did not do.

The Government's reading of the statute would produce the absurd result that the intentional violation by the government of one section of CAFRA effectively immunizes it from the remedial provisions of another section. The Government's interpretation would result in an innocent owner having to allow the Government to unlawfully keep her property indefinitely or retain counsel and pay out of her own pocket to recover it and potentially spend more in attorney fees than the value of the property. Either unfair result is antithetical to CAFRA, the stated purpose of which is to 'make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures.' In this case, Petitioners are exactly the type of people CAFRA was designed to protect and make whole – innocent property owners merely seeking the return of their held property.

*Kazazi v. U.S. Customs & Border Prot.*, 376 F. Supp. 3d 781, 783-84 (N.D. Ohio 2019)

(quoting H.R. Rep. 106-192, 11).


## CONCLUSION

For the reasons set forth herein and in the accompanying Declaration, Exhibits and Verified Claim of Claimant-Movant Karie A. Perez, Ms. Perez respectfully requests that this motion for the immediate return of her seized property pursuant to 18 U.S.C. § 983 be granted in its entirety, together with pre- and post-judgment interest and attorney's fees pursuant to 28 U.S.C. § 2465, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            September 3, 2020

29

LAW OFFICES OF STEVEN L. KESSLER

By:    *Steven L. Kessler*

*Attorneys for Claimant-Movant Karie A. Perez*
747 Third Avenue, 20th Floor
New York, N.Y. 10017-2803
(212) 661-1500
KesslerLawNYC@gmail.com

30